**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| T.S., an individual; | |
| **Plaintiff,** | **CIVIL ACTION NO :**PLEADING TITLE |
| **-vs-** | **Related Case Nos.: 2:19-CV-00755, 2:19-CV-00849; AND 2:19-CV-1194** |
| **INTERCONTINENTAL HOTELS GROUP AND CHOICE HOTELS CORPORATION;** | |
| **Defendants.** | **JURY TRIAL DEMANDED** |

**COMPLAINT**

COMES NOW the Plaintiff T.S., by and through the undersigned counsel, and respectfully submits her complaint for damages and makes the following averments.

**INTRODUCTION**

1. For years, sex trafficking ventures have brazenly operated in and out of hotels throughout this country.  Criminals parade their misconduct openly on hotel properties throughout the United States while the hotels and hospitality industry remain willfully blind to the criminal misconduct to continue earning a profit at the expense of human life, human rights, and human dignity.

2. Intercontinental Hotels Group (hereinafter "IHG") and Choice Hotels Corporation (hereinafter "Choice Hotels") know and have known for more than a decade that sex trafficking repeatedly occurs under their flag throughout the country.  Rather than taking timely and effective measures to thwart this epidemic, IHG and Choice Hotels have instead chosen to ignore the open and obvious presence of sex trafficking on their properties, enjoying the profit from rooms rented for this explicit and apparent purpose.

3. This action for damages is brought by the Plaintiff, a survivor of sex trafficking hereinafter identified by her initials T.S., under the federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (hereinafter "TVPRA").

1

4. T.S. was first trafficked for commercial sex at the age of 15 years old in her native West Virginia. Her first trafficker was a family friend who picked her up from a Kroger grocery store parking lot promising her that he knew a way that she "could make him proud." Further preying on the teenage girl's normal adolescent desire for attention and approval, T.S.'s first trafficker would routinely reward her with beer and crack cocaine for the "good work" that she did performing commercial sex work on adult men for his profit. Eventually this trafficker became violent, and T.S. ran away only to be preyed upon by other traffickers who bought, sold, and required her to sexually service paying strangers as she endured brutal physical assaults, psychological torment, verbal abuse, and false imprisonment at the Defendants' hotels for nearly two decades as the Defendants did nothing but profit.

5. The Plaintiff now brings this action for damages against the Defendants listed herein. Each of the Defendants, in violation of 18 U.S.C. § 1595, knowingly benefited from facilitating a venture that they knew, or at the very least should have known, to be engaging in sex trafficking in violation of 18 U.S.C. § 1591(a).

6. T.S. was advertised on www.backpage.com against her will, physically tortured, and then sexually exploited under such duress at hotels in Steubenville and Youngstown, Ohio, including the Holiday Inn® and the Rodeway Inn®.

7. As a direct and proximate result of IHG and Choice Hotels' consistent refusals to prevent human trafficking on their hotel properties, T.S. was sex trafficked, sexually exploited, and victimized repeatedly at IHG and Choice brand hotels.

8. The Plaintiff brings this action pursuant to the Trafficking Victims Protection Reauthorization Act 18 U.S.C. §1595, against the Defendants who enabled, harbored, held, facilitated, and financially benefited from a sex trafficking venture in which T.S. was trafficked for the purpose of commercial sex, sexually exploited, and brutally victimized in violation of 18 U.S.C. §1591 (a).

**PARTIES**

9.   The Plaintiff, having moved to proceed anonymously,[1] and, herein, identified by her initials T.S., was 15 years old when she was first sold for sex and 25 years old when she was trafficked throughout Ohio for the purposes of commercial sex.   The Plaintiff is a victim of trafficking pursuant to 22 U.S.C. §7102 (15) and 18 U.S.C. §1591 (a), and a victim of a "severe form of trafficking" as it is defined under 22 U.S.C §7102 (14).   The Plaintiff currently resides in Cincinnati, Ohio.

10.   Defendant Inter-Continental Hotels Corporation ("IHG") is one of the largest hotel brands in the world.   It is a Delaware corporation and can be served by its registered agent Corporation Service Company, 50 West Broad Street, Suite 1330, Columbus, Ohio 43215.

   a.   Holiday Inn® is an IHG brand property.

   b.   As a hotel operator, Defendant IHG controls the training and policies for its branded properties including the Holiday Inn® hotel where T.S. was trafficked. Defendant IHG represents that it considers guest safety and security important and requires the hotels in its portfolio to comply with IHG brand standards and all local, state, and federal laws.

   c.   Through its relationship with the staff at the Holiday Inn® where T.S. was trafficked and the perpetrator who trafficked T.S. at Holiday Inn® hotels while registered as a guest there, Defendant IHG knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

   d.   IHG receives a percentage of the gross room revenue from the money generated by the operations of Holiday Inn® hotels, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which the Plaintiff was sex trafficked.

   e.   IHG owns, supervises, and/or operates the Holiday Inn® Steubenville located at 1401

---

[1] Contemporaneously with the Complaint, Plaintiff T.S. filed a Motion for Protective Order and Leave to Proceed Anonymously with Memorandum in Support based upon the nature of the allegations in the instant Complaint, which are of an inherently intimate and personal nature. That motion is pending. Undersigned Counsel will provide her identity to counsel for the Defendants upon proper effectuation of service.

University Boulevard, Steubenville, OH 43952.

11. Defendant Choice Hotels International, Inc. ("Choice Hotels") is one of the largest hotel brands in the world. It is a Delaware corporation and can be served by its registered agent United States Corporation Company, 50 West Broad Street, Suite 1330, Columbus, Ohio 43215.

   a. Rodeway Inn® is a Choice Hotels brand property.

   b. As a hotel operator, Defendant Choice Hotels controls the training and policies for its branded properties including the Rodeway Inn® hotel where T.S. was trafficked.

   c. Defendant Choice Hotels maintains that it considers guest safety and security to be important and requires the hotels in its portfolio to comply with Choice brand standards and all local, state, and federal laws.

   d. Through its relationship with the staff at the Rodeway Inn® hotel where T.S. was trafficked and the perpetrator who trafficked T.S. at the Rodeway Inn® hotel while registered as a guest there, Defendant Choice Hotels knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

   e. Choice Hotels receives a percentage of the gross room revenue from the money generated by the operations of Rodeway Inn® hotels, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which the Plaintiff was sex trafficked.

12. Choice Hotels owns, supervises, and/or operates the Rodeway Inn® Youngstown located at 4250 Belmont Ave, Youngstown, OH 44505

13. Whenever reference is made in this Complaint to any act, deed or conduct of the Defendants, the allegation is that the Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the Defendants.

4

## JURISDICTION AND VENUE

14.   This Honorable Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 because this action arises under the Constitution, laws, or treaties of the United States (with an amount in controversy that exceeds $75,000.)

15.   Venue is proper in this district pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action, including the Defendants' misconduct and omissions, occurred in the judicial district where this action is brought.

## SEX TRAFFICKING UNDER FEDERAL LAW

16.   Sex trafficking is defined by the TVPRA under 22 U.S.C. § 7102, as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act and in which the commercial sex act is induced by force, fraud, or coercion." This definition combines the three elements of sex trafficking as a criminal offense: the act, the means, and the purpose.

17.   To best understand the mechanism by which sex trafficking ventures are prohibited by federal criminal law, it's best to address these elements in the reverse.  Sex trafficking is slavery for the *purpose* of commercial sex, a lens on the already existing crimes prohibited by 18 U.S.C. § 1589 and §1590.  The crime of slavery can then be divided into the two (2) elements remaining: the act and the means.  The *act* is the "harboring, transporting, providing, or obtaining," of forced labor, codified as a violation of 18 U.S.C. §1590, while the *means* is labor "obtained or provided by force, fraud or coercion" and is codified as a violation of 18 U.S.C. §1589.

18.   Thus, while the complete definition of 'sex trafficking' is found in the TVPRA under 22 U.S.C. § 7102, and it is specifically prohibited under 18 U.S.C. §1591, it is nevertheless a long-recognized and familiar atrocity.

19.   Pursuant to 18 U.S.C. §1591(a), all who knowingly provide *or* obtain commercial sex that was provided or obtained through force, fraud, and coercion are guilty of sex trafficking.  This includes, at a minimum, **_both_** the 'traffickers' who recruit, harbor, transport, and provide individuals for forced

5

commercial sex work *and* the 'Johns' or 'buyers' who obtain, solicit, or patronize forced commercial sex work.[2]

## FACTUAL ALLEGATIONS

### A. THE HOSPITALITY INDUSTRY'S PARTICIPATION IN THE SEX TRAFFICKING INDUSTRY

*"75% of survivors responding to Polaris's survey reported coming into contact with hotels at some point during their exploitation…Unfortunately, 94% also disclosed that they never received any assistance, concern, or identification from hotel staff."*

*-The Polaris Project [3]*

20.   Human trafficking is the world's fastest growing crime.[4]  While the term 'human trafficking' incorporates all forced labor, the sex trafficking industry alone pulls in an estimated $99 billion each year making it the second largest illicit crime industry behind only the sale of *all* illegal drugs.[5]

21.   Sex traffickers, or 'pimps', use threats, violence, manipulation, lies, debt bondage, and other forms of coercion to compel adults and children to engage in commercial sex acts against their will.

22.   The hospitality industry plays a crucial role in the sex trade.[6]  The trope of the "no-tell motel" is certainly not a new one.  Hotels have long profited from their reputations as havens of privacy and discretion for the offending.  Hotels offer anonymity and non-traceability, making them ideal venues for crime and sex trafficking in particular.

23.   According to National Human Trafficking Hotline statistics, hotels are the top-reported venue, even over commercial front brothels, where sex trafficking acts occur.[7]  Traffickers and buyers alike

---

[2] While the 'pimps' or 'providers' are often referred to as the 'traffickers' and the purchasers are referenced as the 'Johns', 'tricks', or 'buyers' [and such nomenclature is used herein], under federal law *both* categories are 'traffickers'.

[3] *Recommendations for Hotels and Motels*, THE POLARIS PROJECT, https://polarisproject.org/hotels-motels-recommendations (last visited June 19, 2019).

[4] *Human Trafficking is the World's Fastest Growing Crime*, THE ADVISORY BOARD (May 22, 2017, 9:30 AM), https://www.advisory.com/daily-briefing/2017/05/22/human-trafficking.

[5] *Profits and Poverty: The Economics of Forced Labor*, INTERNATIONAL LABOR ORGANIZATION (May 24, 2014), http://www.ilo.org/global/publications/ilo-bookstore/order-online/books/WCMS_243391/lang--en/index.htm.

[6] Giovanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.

[7] *National Human Trafficking Hotline Statistics*, THE POLARIS PROJECT (2016), https://polarisproject.org/resources/2016-hotline-statistics.

frequently use hotel rooms to exploit victims.

24.   Traffickers use hotels as the hub of their operations.  Inside, the victims are harbored, raped, assaulted, and forced to service buyers who come to the hotel solely to purchase sex.  This is referred to as an 'in call'.

25.   Hotels are also the venue of choice for buyers seeking an 'out call,' wherein the buyer rents a hotel room and the trafficker delivers the victim to the buyer's room to complete the sordid transaction. Unsurprisingly, those on the demand side of this transaction (i.e. those purchasing sex) typically choose to engage in trafficking away from their home, naturally leading to the increased involvement of hotels.   In New York City alone, 45% of all reported sexual exploitation took place in hotels, including the Ritz Carlton and the Plaza.[8]

26.   The problem is industry wide.  In the United States, as much as 63% of all trafficking incidents happen in hotels ranging from luxury to economy.[9]

27.    Due to the overall complacency of the hospitality industry on addressing the issue, hotels are *the* venue of choice for sex trafficking.[10]   Traffickers and buyers capitalize on the hotel industry's general refusal to adopt and enforce companywide anti-trafficking policies from the corporate to the property level, train staff on what to look for and how to respond, and/or establish safe and secure reporting mechanisms for those at the point of sale.

28.   Every day, thousands of hotel employees witness manifestations of sex trafficking and commercial exploitation.  Thus, the hospitality industry has the greatest reach to prevent, identify and thwart sexual exploitation where it is most likely to occur.

29.   But aside from their unique position in this epidemic, hotels and motels have the highest obligation to protect their guests from known dangers, including sex trafficking and sexual exploitation, and should be held accountable when they fail to comply.  As aptly stated in a publication

---

[8] Giovanna L. C. Cavagnaro, *Sex Trafficking: The hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY, SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.
[9] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hospitality Industry*, CORNELL HOSPITALITY REPORT, 15(15), 3-10 (2015).
[10] *Hotels Initiative*, THE POLARIS PROJECT, https://polarisproject.org/initiatives/hotels (last visited June 19, 2019).

by the Cornell University School of Hospitality, "the hospitality industry is undoubtedly involved in the sex trafficking industry…and therefore has an inherent responsibility to deter the crime and can be liable for failing to do so."[11]

30. Training hotel staff to identify the signs of sex trafficking and sexual exploitation is a critical and obvious legal obligation for the hospitality industry. The presence of sex trafficking and sexual exploitation in a hotel is frequently an obvious occurrence and, although unutilized, underutilized, or ineffectively utilized, numerous well-researched trainings and toolkits have been published to the hotel industry over the last decade to help hotel staff in every position to identify the signs.[12]

31. From check-in to check-out there are a number of indicators that traffickers and their victims exhibit during their stay at a hotel. With proper training and the implementation of reasonable security measures, hospitality companies could prevent regular sex trafficking under their flag.

32. Obvious signs of sex trafficking at a hotel may include: an excess of condoms in rooms, individuals carrying or flashing large amounts of cash, excessive amounts of cash stored in the room, renting two (2) rooms next door to each other, declining room service for several consecutive days, significant foot traffic in and out of room(s), men traveling with multiple women who appear unrelated, women known to be staying in rooms without leaving, women displaying physical injuries or signs of fear and anxiety, guests checking in with little or no luggage, hotel guests who prevent another individual from speaking for themselves, or a guest controlling another's identification documents.[13]

33. Obviously, hotel staff who have undergone training are more aware of sex trafficking when it happens and are more willing to report it than hotel staff who have not been trained.[14] Thus, hospitality companies are obligated to adopt policies and procedures related to sex trafficking and to enforce these

[11] Giavanna L. C. Cavagnaro, *Sex trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY, SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.
[12] DEPARTMENT OF HOMELAND SECURITY, *Blue Campaign Toolkit*, attached as "Exhibit A." Available at: https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf.
[13] Id. See also, Shea M. Rhodes, *Sex Trafficking and the Hotel Industry: Criminal and Civil Liability for Hotels and their Employees*, THE INSTITUTE TO ADDRESS CRIMINAL SEXUAL EXPLOITATION, Villanova University School of Law (2015), https://cseinstitute.org/wp-content/uploads/2015/06/Hotel_Policy_Paper-1.pdf.
[14] Giavanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY, SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.

policies and procedures as brand standard through to the property level.

34. Hospitality companies can and should mandate that *all* staff working at *all* hotel properties across their brand complete sex trafficking training.[15]

35. The hospitality industry has been cognizant of their role and responsibilities in the sex trafficking industry for years.

36. In 2011, Wyndham Hotels trained only some of its employees to look for signs of trafficking.[16]

37. In 2012, an anti-trafficking coalition alerted Defendants Choice Hotels of the likelihood of sex trafficking during the London Olympics, and inquired about the companies anti-trafficking policies, while urging immediate action regarding trafficking.[17]

38. Choice Hotels claims it has supported the anti-trafficking group Polaris since 2010 and in a partnership with EPCAT (End Child Prostitution, Pornography and Trafficking of Children for Sexual Purposes) developed a training module in 2010 for hotel management and staff.[18]

39. Further, nationwide campaigns recognized the issue of human trafficking in the hotel industry and the lack of internal policies to address the issue, and took initiative as early as 1997 with the United Nations Blue Heart Campaign and domestically in 2010 with the Department of Homeland Security's Blue Campaign.[19] These efforts sought to educate both the public and private sectors on identifying and combatting human trafficking, including the hospitality industry and both campaigns released online resources and toolkits publicly accessible to any entity concerned with human trafficking.[20]

---

[15] Shea M. Rhodes, *Sex Trafficking and the Hotel Industry: Criminal and Civil Liability for Hotels and their Employees*, The Institute to Address Criminal Sexual Exploitation, Villanova University School of Law (2015), https://cseinstitute.org/wp-content/uploads/2015/06/Hotel_Policy_Paper-1.pdf.

[16] Katie Lobosco, *Super 8 workers trained to spot sex trafficking*, CNN BUSINESS (Nov. 18, 2014), https://money.cnn.com/2014/11/18/news/companies/days-inn-sex-trafficking/.

[17] *Corporate Strategy to Address Human Trafficking: Investor Recommendations for London Olympic Sponsors and Hospitality Companies, Christian Brothers Investment Services*, CBIS, http://cbisonline.com/us/wp-content/uploads/sites/2/2012/09/FINAL_OlympicsReport_9_28.pdf (last visited June 19, 2019).

[18] *Human Rights Policy*, CHOICE HOTELS, https://www.choicehotels.com/about/responsibility/human-rights-policy (last visited June 6, 2019).

[19] *DHS Blue Campaign Five Year Milestone*, DEPARTMENT OF HOMELAND SECURITY (Jul. 22, 2015), https://www.dhs.gov/blog/2015/07/22/dhs-blue-campaign-five-year-milestone.

[20] *Human Trafficking and the Hospitality Industry*, DEPARTMENT OF HOMELAND SECURITY, https://www.dhs.gov/blue-

40.  Hospitality companies have both the power and responsibility to make sex trafficking difficult for the offenders.  Yet, they either repeatedly fail to heed the call or repeatedly failed to execute their own policies.  Instead, each continues to facilitate these crimes at their hotels, content to direct their efforts solely to profit and the bottom line.

### B.    THE DEFENDANTS CONTROL THE HOSPITALITY INDUSTRY

41.  Hotel brands or flags lend their name and likeness to third party owners, while the building and operations are run by a franchisee or a third party management company under the brands' control. In return, the parent brand exchanges the high risk that is inherent in owning an asset like a hotel for the low risk associated with owning a franchise contract and still profits from putting heads in beds.

42.  The average consumer does not see this relationship.  The parent brand gives the franchisee property its identity.  It provides signage on and in front of the building that assures customers that if they check into that hotel they can expect the standards consistent with the parent hotel brand.  The same brand emblazoned on everything in the hotel from the pens in the bedside tables to the staff uniforms at the front desk.

43.  In addition to brand recognition, a marketing organization, hotel listings in the Global Distribution System (GDS) and other online travel agency databases, the brand provides the franchise hotel with access to its brand wide central reservation system, 800 number, revenue management tools, world-class loyalty programs and a website.  Thus, booking and room reservations are controlled by the corporate parent brand.[21]

44.  The franchise hotel typically pays around 10% of their total revenue back to the parent hotel brand and is required to develop and maintain the property in accordance with the parent brand's standards as they are laid out in the franchise agreement.

45.  Per the franchise agreement, the parent brand may enforce these standards through periodic inspections and even termination of the franchise agreement if the franchise hotel is found to be

---

campaign/hospitalityindustry (last visited June 19, 2019).
[21]  Ellen Meyer, *The Origins and Growth of Franchising in the Hotel Industry*, LODGING MAGAZINE (April 10, 2018) https://lodgingmagazine.com/the-origins-and-growth-of-franchising-in-the-hotel-industry/.

inadequate.  The right of the parent hotel brand to enforce their brand standards is also their responsibility.

46.   At the time of the incidents alleged herein:

    a.   Defendant Choice Hotels Corporation owned and controlled the Rodeway Inn® brand.

    b.   Defendant International Hotels Group owned and controlled the Holiday Inn® brand.

47.   Parent hotel brands may kick delinquent hotels out of their system but it is at the expense of terminating their royalty payments.

### C.  THE DEFENDANTS' WILLFUL BLINDNESS TO SEX TRAFFICKING AT THEIR HOTELS

48.   Defendants Intercontinental Hotels Group, and Choice Hotels Corporation have been on notice of repeated incidences of sex trafficking occurring at their Holiday Inn® and Rodeway Inn® hotels yet these brand managers failed to take the necessary action to prevent sex trafficking and still persist in failing to take the necessary action to prevent sex trafficking at their hotels.

49.   INTERCONTINENTAL HOTELS GROUP ("IHG"):

    a.   Defendant IHG owns, supervises, or operates the Holiday Inn® Steubenville located at 1401 University Boulevard, Steubenville, OH 43952.  IHG failed to implement and enforce any of its own policy or policies and protect Plaintiff T.S. from being sex trafficked.

    b.   IHG knew or should have known that the Holiday Inn® hotel where Plaintiff T.S. was trafficked was an area known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff T.S. was trafficked.[22]

    c.   Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Defendant IHG has repeatedly failed to stop these actions.

    d.   Defendant IHG exercised control over Holiday Inn® hotels by:

        i.   distributing information to assist employees in identifying human trafficking;

---

[22] *Steubenville Crime Rates*, NEIGHBORHOOD SCOUT, https://www.neighborhoodscout.com/oh/steubenville/crime (last visited Jun. 21, 2019).

    ii.  providing a process for escalating human trafficking concerns within the organization;

   iii.  requiring employees to attend training related to human trafficking;

   iv.  providing new hire orientation on human rights and corporate responsibility;

    v.  providing training and education to Holiday Inn® branded hotels through webinars, seminars, conferences, and online portals;

   vi.  developing and holding ongoing training sessions on human trafficking; or

  vii.  providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

e.  IHG was in an agency relationship with Holiday Inn® branded hotels offering public lodging services in the hotel. This agency relationship was created through Defendant IHG's exercise of an ongoing and systemic right of control over Holiday Inn® hotels by Defendant IHG's operations, including the means and methods of how Holiday Inn® branded hotels conducted daily business through one or more of the following actions:

    i.  hosting online bookings on Defendant IHG's domain;

    ii.  requiring Holiday Inn® branded hotels to use Defendant IHG's customer rewards program;

   iii.  setting employee wages;

   iv.  making employment decisions;

    v.  advertising for employment;

   vi.  sharing profits;

  vii.  standardized training methods for employees;

 viii.  building and maintaining the facility in a manner specified by the owner;

   ix.  standardized or strict rules of operation;

    x.  regular inspection of the facility and operation by owner;

    xi.  fixing prices; or

    xii.  other actions that deprive Holiday Inn® branded hotels of independence in business operations.

f.  An apparent agency also exists between Defendant IHG and Holiday Inn® hotels. Defendant IHG held out Holiday Inn® branded hotels to the public as possessing authority to act on its behalf.

g.  Given Defendant IHG's public statements on behalf of its hotel brands and the control it assumed in educating, implementing, and directing its branded hotels, including Holiday Inn® branded hotels, Defendant IHG breached its duties in the following ways:

    i.  did not adequately distribute information to assist employees in identifying human trafficking;

    ii.  failed to provide a process for escalating human trafficking concerns within the organization;

    iii.  failed to mandate managers, employees, or owners attend training related to human trafficking;

    iv.  failed to provide new hire orientation on human rights and corporate responsibility;

    v.  failed to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

    vi.  failed to develop and hold or require ongoing training sessions on human trafficking; or

    vii.  failed to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

h.  For years, Defendant IHG has demonstrated willful blindness to the rampant culture of sex trafficking which tragically occurs on its Holiday Inn® branded properties throughout

13

the country. This same entrenched, pervasive willful blindness to sex trafficking facilitated the sex trafficking of Plaintiff T.S. at Holiday Inn® hotels that forms the basis of this complaint.

    i.    In September 2018, a bloods gang member used threats and violence to force women into prostitution. He was arrested at the Holiday Inn® in Plainview, New York.[23]

    ii.    In October 2017, a man was arrested for trafficking minors at a Holiday Inn® in Knoxville, Tennessee. During the police sting, the authorities found a minor the man had harbored in his car that was reported missing in Asheville, North Carolina.[24]

    iii.    In December 2017, a man forced a woman to take drugs, burned her skin and forced her to sell herself for sex. The victim met the man at a Holiday Inn® in Bethlehem, Pennsylvania for a date, but soon became his slave.[25]

    iv.    In August 2018, three people were arrested at a Holiday Inn® in Tyler, Texas for trafficking a woman and forcing her to engage in sex with multiple johns who responded to her backpage.com advertisement.[26]

    v.    In October 2018, a couple trafficked a woman out of a Holiday Inn® in Minot, North Dakota. She was forced to service 3–5 clients a day, at $120-$220 a person, in order to pay for the pair's hotel rooms and methamphetamines.[27]

    vi.    In November 2018, a man lured a missing woman into his hotel room where he posted advertisements of her on classified websites to engage in sex. Police

---

[23] *Police Say Bloods Member Arrested for Sex Trafficking*, AP NEWS (Sept. 1, 2018), https://www.apnews.com/ab1302acec7c47d49196917f7e73d6e6.

[24] *Missing NC Teen Found During Human Trafficking String Operation*, WSPA (Oct. 13, 2017), https://www.wspa.com/news/missing-nc-teen-found-during-human-trafficking-sting-operation/1009065813.

[25] Rudy Miller, *Lehigh Valley Police Uncover Nationwide Sex Trafficking Ring*, LEHIGH VALLEY LIVE (Dec. 1, 2017), https://www.lehighvalleylive.com/bethlehem/2017/12/local_police_uncover_nationwid.html.

[26] *2 Arrested, 1 More Implicated in Smith County Human Trafficking Case*, EAST ESSEX MATTERS (Aug. 28, 2018), https://www.easttexasmatters.com/news/local-news/2-arrested-1-more-implicated-in-smith-county-human-trafficking-case/1402220169.

[27] Andrea Johnson, *Andrea Beck, Richard Spain Charged With Human Trafficking*, MINOT DAILY NEWS (Oct. 11, 2018), http://www.minotdailynews.com/news/local-news/2018/10/andrea-beck-richard-spain-charged-with-human-trafficking/.

retrieved text messages between the pimp and victim where the victim mentioned being at the Holiday Inn® in the Bronx, New York.[28]

vii. In December 2018, two women and a man were arrested after the men solicited the women for sex at a Holiday Inn® in Vernon, Pennsylvania. The women were offered $2000 to "hang out.[29]

50. CHOICE HOTELS CORPORATION ("Choice Hotels")

a. Defendant Choice Hotels owns, supervises, or operates the Rodeway Inn® Youngstown located at 4250 Belmont Ave, Youngstown, OH 44505.

b. Choice Hotels failed to implement and enforce any of its own policy or policies and protect Plaintiff T.S. from being sex trafficked.

i. Choice Hotels knew or should have known that the Rodeway Inn® hotel where Plaintiff T.S. was trafficked was an area known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff T.S. was trafficked.[30]

c. Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Defendant Choice Hotels has repeatedly failed to stop these actions.

d. Defendant Choice Hotels exercised control over Holiday Inn® hotels by:

i. distributing information to assist employees in identifying human trafficking;

ii. providing a process for escalating human trafficking concerns within the organization;

iii. requiring employees to attend training related to human trafficking;

---

[28] M. L. Nestel, *Alleged 'Pimp' Who Forced Women Into Prostitution, Including Missing Pennsylvania Teenager, Charged*, NEWSWEEK (Nov. 2, 2018), https://www.newsweek.com/corinna-slusser-missing-pennsylvania-ishi-woney-fbi-nypd-new-jersey-1198253.

[29] Scott Beveridge, *Three Charged with Prostitution in Rostraver Township*, OBSERVER-REPORTER (Dec. 4, 2018)/ https://observer-reporter.com/news/localnews/three-charged-with-prostitution-in-rostraver-township/article_f90ed860-f7f5-11e8-91e7-238d5b2c0330.html.

[30] *Youngstown Crime Rates*, NEIGHBORHOOD SCOUT, https://www.neighborhoodscout.com/oh/youngstown/crime (last visited Jun. 21, 2019). See *Rodeway Inn – Youngstown: Reviews*, https://www.choicehotels.com/ohio/youngstown/rodeway-inn-hotels/oh621 ("Shoddy, run down, poor sense of security," "…scary.") See also *Rodeway Inn – Youngstown: Reviews* https://www.tripadvisor.com/Hotel_Review-g5184-d101699-Reviews-Rodeway_Inn-Youngstown_Ohio.html ("The place is a crack house. Local people lingering around selling dope… DIRTY, DIRTY, DIRTY AND SHADY…NOT SAFE.")

    iv.  providing new hire orientation on human rights and corporate responsibility;

    v.  providing training and education to Holiday Inn® branded hotels through webinars, seminars, conferences, and online portals;

    vi.  developing and holding ongoing training sessions on human trafficking; or

    vii.  providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

e.  Choice Hotels was in an agency relationship with Rodeway Inn® branded hotels offering public lodging services in the hotel. This agency relationship was created through Defendant IHG's exercise of an ongoing and systemic right of control over Holiday Inn® hotels by Defendant IHG's operations, including the means and methods of how Holiday Inn® branded hotels conducted daily business through one or more of the following actions:

    i.  hosting online bookings on Defendant Choice Hotels' domain;

    ii.  requiring Holiday Inn® branded hotels to use Defendant Choice Hotels' customer rewards program;

    iii.  setting employee wages;

    iv.  making employment decisions;

    v.  advertising for employment;

    vi.  sharing profits;

    vii.  standardized training methods for employees;

    viii.  building and maintaining the facility in a manner specified by the owner;

    ix.  standardized or strict rules of operation;

    x.  regular inspection of the facility and operation by owner;

    xi.  fixing prices; or

        xii.   other actions that deprive Rodeway Inn® branded hotels of independence in business operations.

51.  An apparent agency also exists between Defendant Choice Hotels and Rodeway Inn® hotels. Defendant Choice Hotels held out Rodeway Inn® branded hotels to the public as possessing authority to act on its behalf.

52.  Given Defendant Choice Hotels' public statements on behalf of its hotel brands and the control it assumed in educating, implementing, and directing its branded hotels, including Rodeway Inn® branded hotels, Defendant Choice Hotels breached its duties in the following ways

    a.   did not adequately distribute information to assist employees in identifying human trafficking;

    b.   failed to provide a process for escalating human trafficking concerns within the organization;

    c.   failed to mandate managers, employees, or owners attend training related to human trafficking;

    d.   failed to provide new hire orientation on human rights and corporate responsibility;

    e.   failed to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

    f.   failed to develop and hold or require ongoing training sessions on human trafficking; or

    g.   failed to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

53.  For years, Defendant Choice Hotels has demonstrated willful blindness to the rampant culture of sex trafficking which tragically occurs on its Rodeway Inn® branded properties throughout the country. This same entrenched, pervasive willful blindness to sex trafficking facilitated the sex trafficking of Plaintiff T.S. at Rodeway Inn® hotels that forms the basis of this complaint.

a. In September 2017, the state of Delaware filed a lawsuit against the Rodeway Inn® in Newark, Delaware after it was declared a criminal nuisance property with over 900 police calls. The manager of the motel was recently charged for soliciting sex on property grounds.[31]

b. In December 2018, a self-proclaims "Crips" gang-member kidnapped two minors from their group home and brought them to a Rodeway Inn® in Ronkonkoma, New York for the purpose of sex trafficking. The 12 year-old called her ex-foster mother, who then called the police.[32]

c. In July 2016, police discovered a sex trafficking ring happening at the Rodeway Inn® in Allentown, Pennsylvania. The man took the women's ID, room keys, car keys and cell phones while making them sell themselves for sex, and held them at the motel against their will. [33]

d. In July of 2017, investigators responded to a call at a Rodeway Inn® in Tyler, Texas where they found four females ranging from 17–36 years-old being held against their will for the purpose of selling sex. One of the victims initiated the call to police that resulted in two men getting arrested for sex trafficking.[34]

e. In February 2019, a man was arrested after sex trafficking a 16 year-old out of a Rodeway Inn® in East Windsor, Connecticut. The man used an online website where he charged $60 for oral sex, $80 for a "quick visit" of 15 minutes, $120 to $130 for 30 minutes, and $150 to $170 for an hour.[35]

---

[31] Josh Shannon, *Former Rodeway Inn Manager Patronized Prostitutes at the Motel, Court Documents Say*, NEWARK POST ONLINE, (Sept, 8, 2017), https://www.newarkpostonline.com/news/former-rodeway-inn-manager-patronized-prostitutes-at-the-motel-court/article_dc7c7008-9447-11e7-9457-9bf5f0959c86.html.

[32] *Police: 2 Central Islip Men Tried to Turn 12-Year-Old Girl Into Prostitute*, NEWS 12 LONG ISLAND, (Dec, 20, 2018, 5:23 PM), http://longisland.news12.com/story/39673810/police-2-men-charged-in-suffolk-sex-trafficking-case-involving-a-child.

[33] *Allentown Police Make Prostitution Bust at Rodeway Inn*, 69 NEWS WFMZ, (Sep. 28, 2016, 10:23 PM EDT), http://www.wfmz.com/news/lehigh-valley/allentown-police-make-prostitution-bust-at-rodeway-inn/99738281.

[34] Kris Kirst, *2 Arrested in Prostitution Ring, Tyler Police Searching for Additional* Suspect, CBS 19, (July, 19, 2017, 1:45 PM CDT), https://www.cbs19.tv/article/news/2-arrested-in-prostitution-ring-tyler-police-searching-for-additional-suspect/457899723.

[35] David Owens, *East Hartford Man Pleads Guilty to Sex Trafficking of 16-Year-Old-Girl*, HARTFORD COURANT, (Feb, 11, 2019), https://www.courant.com/news/connecticut/hc-east-hartford-man-sex-trafficking-0212-20190211-

f. In January 2018, a woman told police that her trafficker left her at the Rodeway Inn® in Billings, Montana while he went to pick up other girls to prostitute in North Dakota. She was able to call a friend with a cell phone her trafficker left behind, who then called police.[36]

g. In May 2018, a man compelled multiple women to become prostitutes after bribing them with heroin at a Rodeway Inn® in Greenville, North Carolina. The man would beat the women, force them to sexually service clients, and demand that the women participate in orgies with the other prostitutes and himself.[37]

h. In December 2017, a man was arrested for sex trafficking after police responded to an online advertisement to have sex with a 16 year-old girl at the Rodeway Inn® in Orlando, Florida. When they arrived, the minor answered the door and had bruises on her face from being beaten earlier that day.[38]

i. In April 2016, a man was charged with trafficking a 17 year-old girl for the purpose of sex. He was arrested at a Rodeway Inn® in Clarksville, Tennessee.[39]

j. In February 2019, a man pointed a gun at women inside of a Rodeway Inn® in Pasco, Washington and forced them to turn tricks for him. The women were required to service 6–10 men a day, charging a minimum of $200 each john.[40]

k. In May 2016, a motel owner was arrested after running the Rodeway Inn® in Caseyville, Illinois like a brothel. Women and minors would come to the motel and there would be 10–20 women being prostituted for the motel owner's profit.[41]

---

pp34b2inc5ehjasg2uuttxiqwa-story.html.
[36] *Day 8: Jury Returns Guilty Verdict in Human Trafficking Trial*, KURL 8 NBC, (Jan, 29, 2018), https://www.kulr8.com/news/day-jury-returns-guilty-verdict-in-human-trafficking-trial/article_44228282-6bfe-59cb-8dd4-.
[37] *Greenville Man Sentenced to Nine Years on Prostitution Charges*, REFLECTOR, (May, 30, 2018), http://www.reflector.com/News/2018/05/30/Greenville-man-sentenced-to-9-years-on-human-trafficking-prostitution.html.
[38] Michael Williams, *Orlando Man Trafficked, Beat Underage Girl, Authorities Say*, ORLANDO SENTINEL, (Dec, 18, 2017), https://www.orlandosentinel.com/news/crime/os-tyquarius-lebby-human-trafficking-20171218-story.html.
[39] https://www.theleafchronicle.com/story/news/2016/04/29/clarksville-man-charged-human-trafficking-case/8370 (last visited March 25, 2019).
[40] Kristen M. Kraemer, *Drugs and Threats to Prostitute Women in Tri-Cities, Prosecutors Say*, TRI-CITY HERALD, (Feb, 24, 2019, 2:11 PM PDT) https://www.tri-cityherald.com/news/local/crime/article226472270.html.
[41] Ashlee Carlstrom, *Caseyville Motel Owner Accused of Sex Crimes*, KMOV4, (May, 16, 2016).

l.  In June 2015, a man brought a woman and two minors across state lines from Wyoming to Dickinson, North Dakota where he sold them for sex at a Rodeway Inn®.[42]

m.  In October 2013, a man used two women in order to run a prostitution ring of minor girls from his jail cell. The woman would recruit girls, get them addicted to heroin and post them on backpage.com. Police arrested the women at the Rodeway Inn® in Watertown, New York.[43]

n.  In June 2017, officers arranged to meet a prostitute off of the website backpage.com charging $140 for "full service". When they arrived at the Rodeway Inn® in Wormleysburg, Pennsylvania, officers arrested a man smoking crack in the bathroom, a woman prostitute, and another man controlling the woman's sexual transactions.[44]

### D.    THE SEX TRAFFICKING OF T.S.

54.    The facts alleged herein stem from multiple sex trafficking rings operating in southern Ohio. While victimized by her traffickers in Ohio, T.S. was subject to repeated instances of rape, physical abuse, verbal abuse, exploitation, psychological torment, kidnapping, and false imprisonment at the Defendants' hotels from 2002–2012.

55.    In 2002, at 25 years old, T.S., a native of Wheeling, West Virginia, was living in a halfway house in Youngstown, Ohio when she met one of her traffickers after he offered her a better place to stay.

56.    T.S. was required to have sex for payment with various buyers at the Defendants' hotels in response to advertisements for commercial sex that her trafficker posted on www.backpage.com

---

https://www.kmov.com/news/caseyville-motel-owner-accused-of-sex-crimes/article_5a291fdd-467a-5094-9cbc-71d41fb9b61b.html.

[42] *Wyoming Man Faces Prostitution, Multiple Federal Charges after Arrest in Dickinson*, GRAND FORKS HERALD, (Jun, 4, 2015), https://www.grandforksherald.com/news/crime-and-courts/3759971-wyoming-man-faces-prostitution-multiple-federal-charges-after-arrest.

[43] https://www.watertowndailytimes.com/article/20131016/NEWS07/710169954 (last visited March 25, 2019).

[44] Amuehlemann, *Three Arrested after Wormleysburg Prostitution Bust*, FOX 43, (Jun, 6, 2017, 10:54 AM EST), https://fox43.com/2017/06/06/three-arrested-after-wormleysburg-prostitution-bust/.

without her consent.[45]

57.     T.S. was sent by her trafficker to walk the prostitution-prone track that was Martin Luther King Drive in Youngstown, Ohio and service the buyers from the track at the nearby Rodeway Inn® at 4250 Belmont Avenue in Youngstown. Her trafficker made it clear that physical harm would be inflicted upon her if she did not fulfill the $200 a day quota he set for her.

58.     T.S.'s trafficker controlled her by making her dependent on crack cocaine and punishing her with physical violence every time she did not conform to his abundant rules.

59.     The Rodeway Inn® had doors that led to the exterior directly from the room.  Over three years, for five nights of the week, T.S.'s trafficker and his partner would rent a room for T.S. to service the clients she met on the track.  T.S. was forced to perform commercial sex acts on as many as six men in an evening. Each man entering and exiting the room at the Rodeway Inn® as an unannounced guest.

60.     T.S.'s trafficker and his partner frequently paid for the room one night at a time and always paid in cash.  The room was frequently left with numerous used condoms scattered across various surfaces at the end of the evening.  Regardless, T.S.'s trafficker and his partner would repeat the process multiple times a week.

61.     During her time in the custody of this trafficker, T.S. was arrested for prostitution during a police sting at the Rodeway Inn® as her trafficker waited in the parking lot. The buyer that T.S. was servicing was also arrested and ended up committing suicide in his holding cell.

62.     After T.S. was arrested, her trafficker's aggression escalated. He became more violent towards T.S. and beat her daily. T.S. was prohibited from going to the hospital and was forced to continue servicing buyers, including at the same Rodeway Inn®. T.S. was arrested again for prostitution, violated her parole, and as a result went to prison.

63.     In the halfway house she was staying at in Columbus, Ohio after she was released from prison,

---

[45] Backpage.com was the leading online marketplace for commercial sex, until it was seized by the federal authorities in April 2018. Backpage.com operated in 97 countries and 943 locations worldwide—and was last valued at more than a half-billion dollars. See STAFF OF PERMANENT SUBCOMMITTEE ON INVESTIGATIONS; 118TH CONG., REP. ON BACKPAGE.COM'S KNOWING FACILITATION OF ONLINE SEX TRAFFICKING (Comm. Print 2017).

T.S. fell victim to another trafficker. This trafficker coerced T.S. to leave the halfway house and walk the nearby prostitution prone track that ran across Champion and Main Street on the east side of Columbus for his profit.  T.S. was again arrested for violating her parole, went back to prison, and shortly thereafter her trafficker was incarcerated for murder.

64.   T.S. was released from prison in 2008.  She met a man that had been actively courting her. T.S. genuinely believed that she was in a romantic relationship with this man until he too began to prostitute her. After a short time this man was trafficking T.S. through truck stops and the Defendants' hotels for commercial sex.

65.  Between 2008 and 2012, this trafficker routinely sold T.S. at hotels throughout Steubenville, Ohio including the Holiday Inn® at 1401 University Boulevard, where T.S. would service incoming clients under her trafficker's watch.

66.  This trafficker controlled a number of other women, so he would arrange regular sex parties for clients who regularly liked to spend large sums of money.  Numerous times throughout the week T.S.'s trafficker would buy out entire hallways of rooms at the Holiday Inn® in Steubenville.  Inside each of the rooms would be a woman prostituted by the trafficker to service buyers for his financial gain.

67.  While at the Holiday Inn® T.S. was watched and monitored by her trafficker or one of his friends to ensure she did not leave.  Someone was with T.S. at all times of the day.  Each buyer entering the Holiday Inn® was a non-paying guest and left shortly after he arrived.  The foot traffic to the rooms was constant and voluminous.

68.  T.S.'s trafficker paid in cash for numerous rooms along the same stretch of hallway for one night only.  And at the end of each evening abundant used condoms were scattered across the rooms. T.S. also observed that the Holiday Inn® had numerous surveillance cameras.

69.  On several occasions, T.S.'s traffickers injured her so badly that she knew it was noticeable to the public. Paraphernalia was often left in the rooms when they left, and there was direct contact between her traffickers and hotel staff. Sometimes furniture in the room would be broken or stolen.

70.    Prior to, during, and following the incidents described herein, the Defendants had actual and/or constructive notice of drug dealing, prostitution, and/or general safety concerns at their hotels, including, but not limited to, video surveillance of their hotels, as well as oral or written complaints regarding said suspicious activity. The Defendants failed to take any actions to curtail these activities.

71.    Had the Defendants been paying attention to the activities being conducted at their hotels and on their properties, and the apparent red flags outlined above, it would have been impossible for them not to notice the victimization of T.S.

### E.  THE DEFENDANTS FACILITATED THE TRAFFICKING OF T.S.

72.    IHG and Choice Hotels profited from the sex trafficking of T.S. and knowingly or negligently aided and engaged with her trafficker in his sex trafficking venture. The Defendants leased rooms to T.S.'s traffickers, when they knew, or should have known, that he was using their room to imprison T.S., physically assault her, and subject her to repeated exploitation as he forced her into sexual servitude.

73.   IHG and Choice Hotels knew, or should have known, that T.S. was being trafficked and that the Defendants were knowingly benefiting financially from said exploitation, because T.S.'s trafficker frequented the Defendants' hotels.

74.   IHG and Choice Hotels knew, or should have known, that T.S. was being trafficked because T.S. was arrested on property grounds, constantly entertained traffic to appease her traffickers' daily quotas, and her traffickers would help check her in then not proceed to the room; behavior that indicated they were using the Defendants' hotels for his illegal sex trafficking venture.

75.    Defendants IHG and Choice Hotels actively participated in this illegal endeavor by knowingly or negligently providing lodging to T.S.'s trafficker in which to harbor T.S. while he was trafficking her.

76.    Defendants Intercontinental Hotels Group and Choice Hotels Corporation profited from the sex trafficking of T.S. and knowingly or negligently aided and participated with T.S.'s trafficker in his criminal venture. The Defendants took no action as T.S. repeatedly visited the hotel, often with

different guests, without any luggage, avoiding all eye contact, and exhibiting signs of malnourishment, and often displaying prominent bruising all over her person.

77. Defendants IHG and Choice Hotels actively participated in this illegal endeavor by knowingly or negligently providing lodging to those who purchased sex from T.S. in which to harbor T.S. while she was being trafficked.

78. The Defendants all had the opportunity to stop T.S.'s trafficker and offenders like him from victimizing T.S. and others like her. Instead, every Defendant failed to take reasonable measures to stop sex trafficking from occurring in their hotels.

79. The Defendants all financially benefited from the sex trafficking of T.S., and other victims like her, and developed and maintained business models that attract and foster the commercial sex market for traffickers and buyers alike.

80. IHG and Choice Hotels enjoy the steady stream of income that sex traffickers bring to their budget level hotel brands, such as Rodeway Inn® and Holiday Inn®.

81. IHG and Choice Hotels financially benefit from their ongoing reputation for privacy, discretion, and the facilitation of commercial sex.

82. The Defendants failed to take any steps to alert the authorities, properly intervene in the situation, or take reasonable security steps to improve awareness of sex trafficking and/or prevent sexual exploitation on their properties.

83. The Defendants maintained their deficiencies to maximize profits by:

 a. Reducing the cost of training employees and managers of how to spot the signs of human trafficking and sexual exploitation and what steps to take;

 b. Not refusing room rentals, or reporting guests to law enforcement, in order to maximize the number of rooms occupied and the corresponding rates, even if the rooms rented were to sex traffickers or buyers;

 c. Lowering security costs by not having proper security measures, including, but not limited to, employing qualified security officers to actively combat human trafficking

and sexual exploitation;

84.    As a direct and proximate result of these egregious practices on the part of the Defendants, T.S. and victims of sex trafficking and exploitation like her, have been permanently injured and damaged physically, emotionally, psychologically, and financially.

## CAUSES OF ACTION

### A.  COUNT ONE – 18 U.S.C §1595 ("TVPRA")

85.    The Plaintiff T.S. incorporates each foregoing allegation.

86.    T.S. is a victim of sex trafficking within the meaning of 18 U.S.C. §1591(a) and is therefore entitled to bring a civil action under 18 U.S.C. §1595.

87.    The Defendants' acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. §1595. Specifically, the Defendants had a statutory obligation not to benefit financially from a venture that they knew, or should have known, to engage in violations of 18 U.S.C. §1591 (a).  At all relevant times, the Defendants breached this duty by participating in, and facilitating, the harboring and providing of T.S. for the purposes of commercial sex induced by force, fraud, or coercion, by their acts, omissions, and commissions.

88.    The Defendants have financially benefited as a result of these acts, omissions, and/or commissions by keeping operating costs low, and maintaining the loyalty of the segment of their customer base that seeks to participate in the sex trade.  Moreover, the Defendants directly benefitted from the trafficking of T.S. on each occasion they received payment for rooms that she was being kept in at the Defendants' hotels. The actions, omissions, and/or commissions alleged in this pleading were the but for and proximate cause of T.S.'s injuries and damages.

89.    T.S. has suffered substantial physical and psychological injuries as the result of being trafficked and sexually exploited at the Defendants' hotels and properties in violation of 18 U.S.C. §1591(a).

## PRAYER FOR RELIEF

WHEREFORE the Plaintiff requests that the jury selected to hear this case render a verdict in

her favor on all counts alleged, and against each and every named Defendant, separately and severally, and that it award damages to her in an amount which will adequately compensate her for the injuries and damages she sustained due to the Defendants' conduct outlined as follows:

    a.   All available compensatory damages for the described losses with respect to each cause of action;

    b.   past and future medical expenses, as well as the costs associated with past and future life care;

    c.   past and future lost wages and loss of earning capacity;

    d.   past and future emotional distress;

    e.   consequential and/or special damages;

    f.   all available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

    g.   disgorgement of profits obtained through unjust enrichment;

    h.   restitution;

    i.   punitive damages with respect to each cause of action;

    j.   reasonable and recoverable attorneys' fees;

    k.   costs of this action; and

    l.   pre-judgment and all other interest recoverable

Also, on the basis of the foregoing, the Plaintiff requests that a jury be selected to hear this case and render a verdict for the Plaintiff, and against the Defendants, and that it award damages to the Plaintiff in an amount which adequately reflects the enormity of the Defendants' wrongs, and which will effectively prevent other similarly caused acts.   Further, the Plaintiff requests that the Court enter judgment consistent with the jury's verdict, and prays for any other damages and equitable relief the Court or jury deems appropriate under the circumstances.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY**

Dated:  July 9, 2019                                    **RESPECTFULLY SUBMITTED,**

J. Corey Asay, 0090203
Morgan & Morgan, P.A.
333 W. Vine Street, Suite 1200
Lexington, KY 40507
T: (859) 286-8368
F: (859) 286-8384
E: CAsay@forthepeople.com

T. Michael Morgan
FBN.:0062229 and KBN.: 0094856
Morgan & Morgan, P.A.
20 N. Orange Avenue, Suite 1600
Orlando, FL 32801
Telephone Phone: (407) 420-1414
Facsimile: (407) 641-5846
Primary email: mmorgan@forthepeople.com
*(Pro-Hac Vice Pending)*

***Trial Attorneys for Plaintiff***